**Affirmed in Part, Reversed and Rendered in Part, and Opinion filed February 16, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00995-CV

## FARMERS INSURANCE EXCHANGE AND ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, Appellants

### V.

## JUAN RODRIGUEZ, Appellee

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2008-33641**

# O P I N I O N

Appellee Juan Rodriguez was injured while helping his neighbor Michael Woodling remove a deer stand from Woodling's trailer. Rodriguez sued Woodling for negligence and, in the same case, Rodriguez's automobile insurer, appellant Allstate County Mutual Insurance Company, seeking coverage under an uninsured/underinsured motorist (UIM) policy. Rodriguez later amended his petition to add Woodling's insurer, appellant Farmers Insurance Exchange, seeking liability coverage for Woodling under his

homeowner's policy. In a pre-trial partial summary judgment, the court declared the claims were covered by both insurance policies. At trial, the jury found no negligence on the part of Rodriguez, found that Woodling was negligent, and found that Woodling's negligence caused Rodriguez's damages. The primary issues on appeal pertain to the trial court's subject matter jurisdiction over the claims against Farmers and interpretation of standard form language in the Allstate automobile policy.

Farmers appeals the trial court's grant of summary judgment against Farmers in favor of Rodriguez, denial of Farmers' plea to the jurisdiction, and entry of declaratory judgment finding coverage under the Farmers insurance policy. In three issues, Farmers contends the trial court lacked subject matter jurisdiction over Rodriguez's claim against Farmers, the homeowner's policy issued by Farmers does not provide liability coverage for Woodling, and Rodriguez filed an impermissible direct action against Farmers without satisfying conditions precedent in Woodling's insurance policy. We hold the trial court erred by granting summary and declaratory judgments against Farmers and denying Farmers' plea to the jurisdiction because Rodriguez's claim against Farmers was not ripe when the court made its rulings. We therefore reverse and render judgment dismissing Rodriguez's claims against Farmers for lack of subject matter jurisdiction.

Allstate appeals the trial court's summary judgment in favor of Rodriguez against Allstate and declaratory judgment finding coverage under the UIM policy. In four issues, Allstate contends its policy does not cover Rodriguez's injury but the Farmers policy does. We hold the UIM provisions in Rodriguez's automobile policy provide coverage for his injury. We therefore affirm the trial court's summary judgment and declaratory judgment against Allstate.

### *Undisputed Factual Background*

The following facts are undisputed. Using a trailer hitched to his pickup truck, Woodling[1] transported a deer stand from his deer lease to his residence. He pulled into his driveway and attempted to remove the deer stand from the trailer. He pushed the deer

---

[1] Woodling is not a party to this appeal.

stand out of the trailer until the legs on the stand touched the driveway. He left the stand resting at a 30-degree angle against the trailer. He then attached a come-along[2] to a fence post and to the stand and attempted to raise the stand upright. Realizing he could not accomplish the task alone, he requested assistance from his neighbor, Rodriguez.

Rodriguez and Woodling decided to lift the stand manually by walking forward out of the trailer and onto the driveway. They began in the trailer, each using both hands to push the stand upward. Then they stepped onto the driveway and took "one or two" more steps. When the stand was no longer touching the trailer, Woodling realized it was too heavy and yelled, "Juan, I can't hold it. Jump." Woodling then jumped away, leaving Rodriguez alone to hold the stand, which weighed approximately 350 pounds. The stand fell, and Rodriguez was injured.

The liability provisions of the Farmers homeowners policy contain the following exclusion for bodily injury claims: "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . trailers [or] semi-trailers" except for "trailers or semi-trailers while not being towed by or carried on a motor vehicle."

Rodriguez's Allstate automobile policy included UIM coverage for damages Rodriguez was "legally entitled to recover from the owner . . . of an uninsured [or underinsured] motor vehicle [including any type of trailer] because of bodily injury sustained by [Rodriguez and] caused by an accident." Under the Allstate policy, the uninsured or underinsured owner's liability must "arise out of the ownership, maintenance or *use* of the uninsured motor vehicle." (Emphasis added.)

### *Procedural History*

Rodriguez filed suit against Woodling and Allstate on June 2, 2008, asserting a negligence claim against Woodling and a claim against Allstate for UIM coverage. Rodriguez amended his petition on September 16, 2008, adding Farmers as a defendant and seeking declarations that the exclusion from liability coverage in the Farmers policy

---

[2] A come-along is a tool used for moving heavy loads or for tightening wire. COLLINS ENGLISH DICTIONARY (2003 ed.).

did not apply or, alternatively, that Rodriguez's damages arose from the use of a trailer covered by the Allstate policy.

Farmers filed a motion to sever, contending Rodriguez's joinder of Farmers was improper.[3] Rodriguez moved for partial summary judgment against Farmers, seeking a declaration that Farmers had a contractual obligation to indemnify Woodling. Farmers moved for summary judgment based on improper joinder, lack of ripeness, and applicability of its "trailers or semi-trailers" exclusion. Allstate moved for summary judgment, asserting that the accident did not arise out of the *use* of an uninsured motor vehicle so that the Allstate policy did not apply. The trial court granted Rodriguez's motion and denied motions filed by Allstate and Farmers. In a combined plea to the jurisdiction and motion to vacate the court's order granting partial summary judgment, Farmers reasserted its jurisdictional arguments before trial of the underlying personal injury claim. The court denied the combined motion.

Before trial, Allstate, while contesting coverage under its policy, stipulated to be bound by the jury's findings on negligence and damages. The jury found Woodling 100% negligent and awarded damages to Rodriguez totaling $233,123.71. Rodriguez subsequently filed a motion for summary judgment against Allstate, seeking a declaration that his injuries were covered under the Allstate policy, which the trial court granted. After reducing the jury award based on the amount of Rodriguez's incurred medical expenses, the trial court entered judgment awarding Rodriguez $211,618.42, plus interest and costs, and declaring that Rodriguez's injuries were covered under both the Farmers and Allstate policies.

### *Standards of Review*

**Traditional Summary Judgment**.

To prevail on a traditional Rule 166a(c) summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled

---

[3] The record does not show whether the trial court ruled on that motion.

to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A plaintiff moving for a traditional summary judgment must conclusively prove all essential elements of its claim. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

A defendant may prevail by traditional summary judgment if it conclusively negates at least one essential element of a plaintiff's cause of action. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A movant seeking traditional summary judgment on an affirmative defense has the initial burden of establishing entitlement to judgment as a matter of law by conclusively establishing each element of his affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see also* Tex. R. Civ. P. 166a(b)–(c). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

On appeal, we review de novo a trial court's summary judgment ruling. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When, as here, the parties file competing motions for summary judgment and the trial court grants one motion and denies the other, this court should review both parties' summary-judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.

5

2005); *English v. B.G.P. Int'l, Inc.*, 174 S.W.3d 366, 370 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### Subject-matter jurisdiction.

The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction or another procedural vehicle such as a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).[4] When a plea to the jurisdiction challenges jurisdictional facts, as here, we consider the evidence submitted by the parties. *Stinson v. Ins. Co. of Penn.*, 286 S.W.3d 77, 83 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The standard of review for a jurisdictional plea based on evidence generally mirrors that of a traditional motion for summary judgment. *Id.*

### Declaratory judgment.

In reviewing a declaratory judgment, we refer to the procedure for resolution of the issue at trial to determine the applicable standard of review on appeal. Tex. Civ. Prac. & Rem. Code § 37.010; *English*, 174 S.W.3d at 370; *see also Gen. Agents Ins. Co. of Am. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). Here, because the trial court implicitly resolved the declaratory judgment issues by ruling on motions for summary judgment, we review the propriety of the trial court's grant of the declaratory judgments under the same standards applicable for review of summary judgments. *English*, 174 S.W.3d at 370. Therefore, we must determine whether the trial court properly granted Rodriguez's declaratory judgment requests and, if not, enter the judgment which should have been entered by the trial court. *Id.*

---

[4] Thus, it was appropriate for Farmers to assert in its summary-judgment motion that the trial court lacked subject-matter jurisdiction. *See Blue*, 34 S.W.3d at 554. Farmers subsequently filed a plea to the jurisdiction on the same jurisdictional grounds.

6

*Jurisdiction over Claim against Farmers*

In its third issue, Farmers contends Rodriguez lacked standing to sue Farmers and Rodriguez's claim against Farmers was not ripe, depriving the trial court of subject-matter jurisdiction. We agree with Farmers that Rodriguez's claim was not ripe.[5]

Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). In evaluating ripeness, courts consider "whether, *at the time a lawsuit is filed*, the facts are sufficiently developed 'so that an injury has occurred or is likely to occur, rather than being contingent or remote.'" *Id.* (emphasis in orig.) (citation omitted). Although a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed. *Id.* A case is not ripe when resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *Id.* at 756 (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000)). "[T]he essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts." *Id.* (citing *Patterson v. Planned Parenthood of Houston and Se. Tex.*, 971 S.W.2d 439, 444 (Tex. 1998)) (second alteration in original).

A tort claimant has no direct claim against the tortfeasor's liability insurer until the insured tortfeasor is adjudged liable to the tort claimant.[6] *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997) (per curiam); *State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (per curiam); *Great Am. Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969). A party injured by the insured is a third-party beneficiary of a liability insurance policy, but he cannot enforce the policy

---

[5] Accordingly, we do not reach the other issues presented by Farmers regarding whether Rodriguez's injury was covered by the Farmers policy, whether Rodriguez filed an impermissible direct action against Farmers without first satisfying conditions precedent in the policy, or whether Rodriguez had standing to bring his claim against Farmers. We likewise do not reach two of Allstate's issues asserting that Rodriguez's injuries are covered under the Farmers policy (issues three and four).

[6] This principle applies where the insurance policy contains a so-called "no action" provision. *See Struna v. Concord Ins. Servs., Inc.*, 11 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Section I, ¶ 11 of the Farmers policy is a "no action" provision.

directly against the insurer until it has been established, by final judgment or agreement, that the insured has a legal obligation to pay damages to the injured party. *Ollis*, 768 S.W.2d at 723. It is undisputed that when the trial court granted Rodriguez summary judgment against Farmers, Woodling's obligation to pay damages to Rodriguez had not been established by final judgment or by agreement. Therefore, Rodriguez's claim against Farmer's was not ripe when the trial court granted summary judgment. *See Certain Underwriters at Lloyds, London v. Four J's Cmty. Living Ctr., Inc.*, No. H-11-0713, 2011 WL 6026689, at *1–2 (S.D. Tex. Dec. 2, 2011) (holding that, under Texas law, tort plaintiff did not yet have claim under tort defendant's insurance policy because final judgment had not yet been rendered upon jury verdict in plaintiff's favor); *Robinson*, 353 S.W.3d at 755–56 (holding that declaratory-judgment claims were not yet ripe because there was no showing that claimants had suffered a concrete injury); *Gibson*, 22 S.W.3d at 853 (noting that to allow premature adjudication of contingent situations would "eschew the ripeness doctrine" and "create an impermissible advisory opinion.").

Though a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed. *See Robinson*, 353 S.W.3d at 755. The record does not reflect any agreement establishing Woodling's obligation to pay Rodriguez damages.[7] Therefore, Rodriguez cannot demonstrate a reasonable likelihood that his claims against Farmers will soon ripen in the case under review, and these claims must be dismissed for lack of subject-matter jurisdiction. *See id.*

In *Firemen's Insurance Co. v. Burch*, the Supreme Court of Texas held that there can be no justiciable controversy regarding the insurer's duty to indemnify before a judgment has been rendered against an insured. 442 S.W.2d 331, 332–34 (Tex. 1968). The supreme court has recognized a limited exception to this rule that applies "when the insurer has no duty to defend *and the same reasons that negate the duty to defend*

---

[7] Rodriguez cannot obtain a final judgment against Woodling until Rodriguez's claim against Farmers is adjudicated because Farmers and Woodling are both parties. But Rodriguez's claim is not ripe and cannot be adjudicated until after Rodriguez obtains a final judgment against Woodling.

8

*likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original); *see also D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009).

Rodriguez sued Farmers seeking payment based on Farmers' purported duty to indemnify Woodling. While generally acknowledging that a third party may not sue an insurance company for payment under its policy without a judgment against the insured, Rodriguez argues the exception recognized in *Griffin* should be applied here because "undisputed facts pertaining to the duty to indemnify . . . were included in the summary judgment record [and] are consistent with the factual record at trial and the fact-finder's disposition of the personal injury lawsuit." We find no merit in this argument.

The holding in *Griffin* pertained to an underlying tort suit for injuries sustained in a drive-by shooting. *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 744–45 (citing *Griffin*, 955 S.W.2d at 84). The policy in that case excluded coverage for intentional torts. *Griffin*, 955 S.W.2d at 83. The *Griffin* court thus concluded no "conceivable set of facts" could be developed in the underlying case that would transform the intentional shooting into an auto accident covered by the policy. *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 745. The court held that the duty to indemnify may be adjudicated before judgment is entered on the claim against the insured, when the facts negate both the duty to defend and the duty to indemnify.[8] *Griffin*, 955 S.W.2d at 84. Here, the duty to defend is not at issue.[9] More importantly, even though the parties do not dispute the underlying accident facts, the jury was required to decide and apportion liability before judgment could be entered. Thus, when the lawsuit was filed, coverage of Rodriguez's injury under the Farmers policy was contingent on the jury's future liability finding, if any, including apportionment between Woodling and Rodriguez. The *Griffin* exception is inapplicable. *See D.R. Horton-Tex.,*

---

[8] The duty to indemnify requires payment of all covered claims and judgments against an insured, whereas the duty to defend requires tender of a defense in any lawsuit brought against the insured that seeks damages for an event potentially covered by the policy. *D.R. Horton-Tex., Ltd.*, 300 S.W.3d at 743. An insurer's duty to defend is justiciable before the entry of judgment on a claim against the insured. *See English*, 174 S.W.3d at 371.

[9] Rodriguez's injury, moreover, did not arise from an intentional tort.

*Ltd.*, 300 S.W.3d at 743–45 (distinguishing *Griffin*); *Burlington Northern and Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 334 S.W.3d 217, 219–20 (Tex. 2011) (same). We hold that Rodriguez's claims against Farmers were not ripe and that the trial court lacked jurisdiction to grant summary judgment against Farmers declaring coverage under the Farmers policy. The trial court erred in denying Farmers' plea to the jurisdiction, and the proper remedy is to reverse the trial court's judgment as to Rodriguez's claims against Farmers and render judgment dismissing these claims for lack of subject matter jurisdiction.

We sustain Farmers' third issue.

### Coverage of Rodriguez's Injury by the Allstate Policy

In two issues, Allstate argues the trial court erred by denying its summary judgment motion against Rodriguez, granting summary judgment in favor of Rodriguez, and declaring that UIM language in his automobile policy provide coverage for his injury. In reference to the "use" exclusion, Allstate contends that "loading and unloading" a trailer is not *use* as contemplated under the Allstate policy, and even if it were, there is no coverage because Rodriguez's injury did not "arise out of" the use of the trailer. We are not persuaded by these arguments.

The Allstate policy specifies that liability of the owner of an uninsured or underinsured vehicle "must arise out of the ownership, maintenance, or *use* of the uninsured motor vehicle."[10] (Emphasis added.) The term "use" is not defined in the policy. Allstate urges us to hold that "loading and unloading" is excluded because the "use" clause omits these activities as a matter of law. We decline to do so.

Automobile insurers in Texas are required to provide UIM coverage in all policies. The quoted language from the Allstate policy mirrors statutory requirements. *See* Tex. Ins. Code § 1952.101(a). The purpose of UIM coverage is to protect conscientious drivers from financial loss caused by irresponsible parties, and courts liberally construe

---

[10] The policy defines "uninsured motor vehicle" to include underinsured motor vehicles.

the UIM statutes. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 128 (Tex. 2004); *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex. 1989). Texas state and federal courts applying Texas law have concluded that automobile liability policies may cover loading and unloading of a vehicle even when those terms are not specifically included in the policy. *See, e.g., Emasco Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 525 (5th Cir. 2006); *Panhandle Steel Prods. Co. v. Fidelity Union Cas. Co.*, 23 S.W.2d 799, 801 (Tex. Civ. App.—Fort Worth 1929, no writ) (holding injury of passerby that occurred after iron beam was unloaded from truck and was being carried across sidewalk was result of use of truck). The parties have not cited, and research has not revealed, any Texas cases construing UIM policies that have held the term "use" without a "loading and unloading" clause excludes coverage for loading and unloading.

Allstate cites *Liberty Mutual Insurance Co. v. American Employers Insurance Co.*, 556 S.W.2d 242 (Tex. 1977) for the proposition that the inclusion of a "loading and unloading" endorsement in an insurance policy expands coverage from the coverage afforded by the phrase "ownership, maintenance, or use." *Id*. at 244. But the court in *Liberty Mutual* did not construe UIM coverage or the "ownership, maintenance, or use" clause.[11] It analyzed whether injured workers were "borrowers" of the automobile to determine if they were insured persons under the policy.[12] *Id*. *Liberty Mutual* does not hold that the "use" of a vehicle may never include "loading and unloading" merely because the policy does not include those terms. *See id*. Moreover, the intent to exclude

---

[11] The commercial policy in Liberty Mutual included "loading and unloading."

[12] *Liberty Mutual* involved competing automobile and general liability policies. *Id*. at 243. The automobile policy excluded nonemployees of the insured unless they were "borrowers" of vehicles owned by the insured. *Id*. A "borrower" was defined by the court as "someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." *Id*. at 244. Before the addition of the loading and unloading endorsement to the standard automobile liability policy, neither the automobile policy nor the standard liability policy defined which insurer had liability coverage for injuries sustained upon the premises of one who was insured under a general liability policy during the loading and unloading of a vehicle not owned or hired by the general liability insured. *Id*. The court concluded the policy exclusion for persons who were unloaders but not "borrowers" of the vehicle was intended to limit the insurer's liability for injuries of nonemployees who were not borrowers of the vehicle. *Id*. at 245. By contrast, the Allstate policy covers injuries to Rodriguez caused by the owner or operator of an uninsured or underinsured motor vehicle, including "trailer[s] of any type." It does not expressly limit Allstate's liability based on whether an injured party is a "borrower" of a vehicle.

11

coverage must be expressed in clear and unambiguous language. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). If Allstate intended to exclude loading and unloading from the scope of coverage, then it was incumbent upon it to expressly and clearly state the exclusion in the policy. *See Nat'l Auto. & Cas. Ins. Co. v. Glens Falls Ins. Co.*, 493 S.W.2d 909, 911–12 (Tex. Civ. App.—Tyler 1973, no writ) (holding clause expressly excluding "loading and unloading" of vehicle was effective). Having failed to do so, Allstate may not now complain.[13] *See Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555.

Allstate further argues that Rodriguez's injuries did not "arise out of" any use of the trailer. We disagree. Texas courts broadly define "use" of a motor vehicle in the context of insurance policies. *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 156 (Tex. 2010). It is a "general catchall . . . , designed and construed to include all proper uses of the vehicle." *Lyons v. State Farm Lloyds & Nat'l Cas. Co.*, 41 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co.*, 437 S.W.2d 542, 545 (Tex. 1969)). "Use" means "to put into action or service; to employ for or apply to a given purpose." *Id.* (citing *LeLeaux v. Hamshire–Fannett I.S.D.*, 835 S.W.2d 49, 51 (Tex. 1992)). In *Mid–Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999), the court employed the following factors suggested in two insurance treatises[14] to help determine when a motor vehicle has been in "use" under a similar UIM insuring provision:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such; (2) the accident must have arisen within the natural

---

[13] Allstate also cites an unreported federal district court's opinion that held a "use" clause (without "loading and unloading" language) would not cover injuries sustained by a patient who travelled in an ambulance to the hospital. *See St. Paul Fire & Marine Ins. Co. v. Am. Int'l Surplus Lines Ins. Co.*, No. 3:95-CV-0790-D, 1997 WL 160192, at *3–4 (N.D. Tex. Mar. 31, 1997). The court held that "the acts of providing emergency medical care and of carrying a person from some location to an ambulance are . . . a necessary incident to the operation of an ambulance service, but are not fairly described as the use of an ambulance." *Id.* at *3. The inclusion of a loading and unloading clause would not alter the court's reasoning or result.

[14] *See* 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE § 4317, at 367–69 (Buckley ed. 1979); 8A COUCH ON INSURANCE 3d § 119:37, at 119–56 (2005).

territorial limits of an automobile, and the actual use must not have terminated; (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.[15]

*Id.* at 157.[16]

Using the factors elucidated in *Lindsey* as a framework, and taking into consideration the broad definition of "use" recognized in Texas jurisprudence, we conclude that Rodriguez's injury resulted from use of the trailer as a matter of law.

Inherent nature. It is in the inherent nature of a trailer that it will be used to haul and tow materials. *Cf. Mid-Continent Cas. Co.*, 323 S.W.3d at 155 ("[I]t is in the inherent nature of a 2000 Ford F–250 Super Duty pickup truck on a cell tower job site that it will be used to haul and tow materials."); *Panhandle Steel Prods. Co.*, 23 S.W.2d at 801 (holding, when delivery of material was main purpose of haul, "loading and unloading were as necessary to accomplish that purpose as was the driving of the truck from plaintiff's place of business to the point of delivery"). That process includes not only the immediate action of loading and unloading materials from the trailer but also moving them from their starting point to their destination.[17] *See Liberty Mut. Ins. Co.*, 556 S.W.2d at 244; *Travelers Ins. Co. v. Emp'r's Cas. Co.*, 380 S.W.2d 610, 612 (Tex. 1964); *Panhandle Steel Prods. Co.*, 23 S.W.2d at 801. Using a trailer in this manner is "not an unexpected or unnatural use of the vehicle." *See Mid-Continent Cas. Co.*, 323 S.W.3d at 155 (citing *Lindsey*, 997 S.W.2d at 158); *Commercial Standard Ins. Co.*, 455 S.W.2d at 717.

Natural territorial limits. The accident was within the "natural territorial limits" of the trailer, even though Woodling and Rodriguez had taken a few steps out of the trailer. In *Mid-Continent Casualty Company* and *Lindsey*, this factor was satisfied even though

---

[15] The *Lindsey* court noted this is not an "absolute test," but the factors are helpful in focusing the analysis. 997 S.W.2d at 157–58; *see also Mid-Continent Cas. Co.*, 323 S.W.3d at 155 n.4. The test is only a conceptual framework to analyze the inclusion or exclusion at issue. *Mid-Continent Cas. Co.*, 323 S.W.3d at 155 n.4

[16] The court acknowledged that the third factor may be difficult to define because it is not always clear how the vehicle, as opposed to other things, contributed to an accident. *Lindsey*, 997 S.W.2d at 157; *see also Mid-Continent Cas. Co.*.323 S.W.3d at 156.

[17] Here, the parties do not dispute that the deer stand did not reach its final destination.

13

both accidents occurred outside the insured vehicles. *See Mid-Continent Cas. Co.*, 323 S.W.3d at 155 (holding injuries sustained when rope that was anchored on one end to the truck broke arose from use of truck); *Lindsey*, 997 S.W.2d at 160 (holding injury arose out of use of truck when child entered through sliding rear window and accidentally discharged loaded shotgun mounted over rear window, injuring person in nearby vehicle, because child did not stray from purpose of entering truck by playing with gun or trying to shoot it).

The Supreme Court has adopted the complete operation doctrine, which defines the terms "loading and unloading" in the context of an insurance policy. "'[L]oading and unloading' embraces not only the immediate transference of the goods to or from the vehicle, but also the complete operation of transporting the goods between the vehicle and the place from or to which they are being delivered." *Liberty Mut. Ins. Co.*, 556 S.W.2d at 244; *Travelers Ins. Co.*, 380 S.W.2d at 612.[18] Any activities involved in moving the goods to their final physical destination are themselves included in the term "unloading" and thus qualify as a use of the vehicle for insurance purposes. *See Travelers Ins. Co.*, 380 S.W.2d at 613–14. The court noted, "[w]hen a vehicle is being unloaded it is being used to the same extent as if it were being driven, and the person doing the unloading is entitled to the same protection as the owner or operator." *Id.* at 614; *see also Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.*, 455 S.W.2d 714, 716–17 (Tex. 1970) (quoting *Travelers Ins. Co.*). We conclude under these circumstances that Woodling and Rodriguez were using the trailer when the accident occurred.

Cause. The third factor is whether the vehicle produced the injury. *Lindsey*, 997 S.W.2d at 157. The Supreme Court of Texas has stated that the causation inquiry in this

---

[18] The cited cases that apply the complete operation doctrine involved third party claims arising from liability provisions of standard automobile insurance policies, whereas this case involves a liability claim arising under a UIM provision. *Liberty Mutual* and *Travelers Insurance Company*, however, both construe language in standard automobile policies that is identical to the language in the Allstate UIM provision providing coverage for injuries "aris[ing] out of the ownership, maintenance, or use" of the insured vehicle. *See Liberty Mut. Ins. Co.*, 556 S.W.2d at 243 n.1; *Travelers Ins. Co.*, 380 S.W.2d at 612. The UIM policy, moreover, expressly covers as an "[u]ninsured motor vehicle" "a land motor vehicle or *trailer of any type*." (Emphasis added.) Thus, the same principles apply here.

context involves "but for" causation. *Mid-Continent Cas. Co.*, 323 S.W.3d at 156. A but for cause is "one without which the event would not have occurred." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 223 (Tex. 2010).

Rodriguez's accident would not have occurred if Rodriguez had not been assisting Woodling in unloading the deer stand from the trailer. *See Mid-Continent Cas. Co.*, 323 S.W.3d at 156 (holding rope would not have broken causing injuries if truck had not been used to hoist headache ball). The accident did not merely happen near the trailer: Woodling and Rodriguez could not have accomplished the same result without the presence of the trailer, and, as we have noted, the use of a trailer includes unloading materials. *See id.*; *Panhandle Steel Prods. Co.*, 23 S.W.2d at 802.[19] The trial court properly found the "use" clause in Allstate's policy covered Rodriguez's injury.

This case is not controlled by the cases cited by Allstate in support of its argument that the accident was not caused by the use of a trailer as such. The cases cited by Allstate regarding UIM policies involved *intentional* shootings from one vehicle into another that were held to be incidental to the use of the vehicles. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Whitehead,* 988 S.W.2d 744, 745 (Tex. 1999); *Collier v. Emp'rs Nat'l Ins. Co.*, 861 S.W.2d 286, 289 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Here, as we have held, Rodriguez was injured while he was unloading the trailer—which was a proper use—so his injury was not merely incidental to the use of the trailer.

*National Union Fire Insurance Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997) involved a duty to defend. An insurer's duty to defend is determined from the four corners of the pleadings and the language of the insurance policy. *Id.* at 141. In such cases, if the petition does not allege facts within the scope of

---

[19] [S]ince the act of unloading was one of the natural and necessary steps to the undertaking to deliver the [truck's contents], and followed in natural sequence the use of the truck to that end, which use was specifically contemplated and covered by the policy, we believe that the conclusion is unavoidable that the use of the truck was the primary and efficient cause of the injury, even though it should not be held to be the proximate cause.

*Panhandle Steel Prods. Co.*, 23 S.W.2d at 802.

coverage, the insurer is not required to defend a suit against its insured. *Id.* The petition in *National Union* alleged only that a driver was operating the insured's truck when he negligently discharged a firearm injuring the plaintiff. *Id.* at 142. The insurance policy only covered claims where the injury was caused by an accident *resulting from* the *use* of a covered auto. *Id.* Accordingly, the allegations did not give rise to a duty to defend by the insurer. *Id.*; *see also Mid-Continent Cas. Co.*, 323 S.W.3d at 156. Here, we are not dealing with the duty to defend; thus, the same pleading standard does not apply.[20]

The other two cases cited by Allstate were not insurance coverage cases, but instead involved claims under the Texas Torts Claims Act (TTCA). The TTCA waives governmental immunity for "property damage, personal injury, or death aris[ing] from the operation or use of a motor driven vehicle."[21] *LeLeaux*, 835 S.W.2d at 51 (citing Tex. Civ. Prac. & Rem. Code § 101.021(1)(A)). The required "operation or use" under the TTCA is by the governmental employee. *Id.* *LeLeaux* involved a school bus that was not in operation when a student jumped up from where she had been sitting in the open rear doorway of the empty school bus and hit her head on the door frame. 835 S.W.2d at 51. The court held that the injury did not arise from the use of the bus because the driver was not aboard when the injury occurred—in other words, the injury did not arise from the school district's or its driver's operation or use of the bus—and immunity was not waived. *Id.* at 52. *Brown v. Houston Independent School District*, 123 S.W.3d 618 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), involved an officer who pulled over a woman in his patrol car and sexually assaulted her *in her own vehicle*. *Id.* at 619. Thus, the assault did not occur in the patrol car, but in a vehicle which was not operated by the officer. *Id.* at 622; *see also Mid-Continent Cas. Co.*, 323 S.W.3d at 156. Here, by contrast, the use of the vehicle covered by the Allstate policy was not similarly limited to a particular user. Moreover, Rodriguez's injury arose from using the trailer as a trailer

---

[20] *Lindsey*, by contrast to *National Union*, was not a duty-to-defend case, but involved an action to recover UIM benefits, as in this case. *See* 997 S.W.2d at 154. Thus, the allegations in the petition were not at issue. The plaintiff proved the vehicle was in use at the time of the accident because the child's "sole purpose was to gain entry into the truck" through the back window and he did not stray from that purpose. *Lindsey*, 997 S.W.2d at 158. He did not play with the gun or try to shoot it. *Id.*; *see also Mid-Continent Cas. Co.,* 323 S.W.3d at 154–55.

[21] Waivers of sovereign immunity must be construed narrowly. *LeLeaux*, 835 S.W.2d at 51.

16

while he was unloading it.  *See Mid-Continent Cas. Co.*, 323 S.W.3d at 155; *Lindsey*, 997 S.W.2d at 160.

We hold that the trial court did not err by rendering summary judgment against Allstate in favor of Rodriguez and by declaring that Woodling's liability arose from the use of the trailer.  We overrule Allstate's first and second issues.

### *Conclusion*

We hold that Rodriguez's claims against Farmers were not ripe and thus the trial court did not have jurisdiction to enter a judgment against Farmers.  Therefore, as to the claims against Farmers, we reverse the trial court's judgment and render judgment that these claims be dismissed for lack of subject-matter jurisdiction.

We further hold that the trial court did not err by entering summary judgment and declaratory judgment in favor of Rodriguez against Allstate.  We affirm that portion of the declaratory judgment finding Woodling's liability arose from "use" of the trailer and finding coverage over Rodriguez's injury under the Allstate policy.

/s/           Martha Hill Jamison
                          Justice

Panel consists of Justices Frost, Seymore, and Jamison.

17