

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00012-CV
_____

ALAN KIELY, Appellant

V.

TEXAS FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee

On Appeal from the County Court at Law No. 2
Hays County, Texas
Trial Court No. 18-0050-C

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Alan Kiely sued Texas Farm Bureau Casualty Insurance Company (Farm Bureau) to recover personal injury protection (PIP) benefits for injuries he sustained when a lumber company employee was unloading metal roofing sheets at his home. Arguing that Kiely's injuries did not result from a motor vehicle accident and that he was not a "covered person" under the insurance policy, Farm Bureau filed, and the trial court granted, its motion for summary judgment. The trial court also denied Kiely's motion for partial summary judgment.

Kiely appeals, maintaining that the trial court erred in granting Farm Bureau's summary judgment motion and in denying his motion for partial summary judgment because (1) his injuries stemmed from a motor vehicle accident, (2) he was a "covered person" as defined by the insurance policy, and (3) he was entitled to extra-contractual damages. For the reasons below, we affirm the trial court's judgment granting Farm Bureau's motion for summary judgment and denying Kiely's motion for partial summary judgment.

## I.      Background

Kiely and his wife, Sharon, procured a Texas personal automobile policy (Policy) from Farm Bureau. The Policy included, among other things, PIP coverage with a limit of $10,000.00 per person for each accident.[1]

---

[1]Section 1952.151 of the Texas Insurance Code reads,

> "Personal injury protection" consists of provisions of an automobile liability insurance policy that provide for payment to the named insured in the policy, members of the insured's household, and any authorized operator or passenger of the named insured's motor vehicle, including a guest occupant, of all reasonable expenses that:

In May 2016, a hailstorm damaged the roof of Kiely's Wimberly, Texas, residence.[2] As a result, Kiely ordered metal roofing sheets from Cragg's Do It Best Lumber and Home Center, Inc. (Cragg's), to repair the roof. On June 10, 2016, a flatbed delivery truck from Cragg's, driven by its employee, Brian David Reeves, arrived at the Kiely's residence with the metal roofing sheets in the bed of the truck. The metal sheets were bound in three separate bundles in accordance with their length.

In preparation for the delivery of the metal sheets, Kiely had placed wooden pallets in front of his home so that Reeves could place the metal sheets on the pallets. Kiely, who was using a cane because of a previous knee surgery, was outside when Reeves arrived. After learning that Reeves did not have a forklift, Kiely asked him to position the truck so its lift "could be used to tilt the [truck's] bed and unload the metal sheets onto the pallets." Reeves complied with Kiely's suggestion, but misaligned the truck with the pallets. Disregarding Kiely's suggested method of unloading the metal sheets, Reeves began moving the first bundle of metal sheets by hand, trying

(1)     arise from an accident;

(2)     are incurred not later than the third anniversary of the date of the accident; and

(3)     are for:

    (A)     necessary medical, surgical, x-ray, or dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing, or funeral services;

    (B)     in the case of an income producer, replacement of income lost as the result of the accident; or

    (C)     in the case of a person injured in the accident who was not an income or wage producer at the time of the accident, reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household.

TEX. INS. CODE ANN. § 1952.151. Kiely's PIP insurance coverage was in effect at the time of his injury.

[2]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

to unload them by himself. As Reeves was pulling the first bundle of metal sheets, it slid off the truck bed, pinning Reeves between the ground and the metal sheets.

Reeves screamed for Kiely to help him, but Kiely told Reeves that he could not lift the metal sheets off him because of his knee problems. After Reeves continued "scream[ing] in pain" and asking for help, Kiely wedged his walking cane under the metal sheets to get some leverage, but was unsuccessful. Kiely then bent over, grabbed a corner of the bundle of metal sheets, and tried to lift it. As he did so, Kiely heard a "pop" and immediately felt a sharp pain in his lower back. Still in need of assistance, Reeves continued to ask Kiely for help. In response, Kiely located a 2x4 plank, pushed it under the corner of the bundle, and lifted it high enough to free Reeves. As a result of his actions, Kiely fractured two vertebrae in his lower back and had to have several surgeries.

The parties stipulated that Kiely did not come in contact with the inside or the outside of the truck before or during the incident, nor did he touch the lift on the truck. "At no time was Kiely ever occupying or struck by the truck." Kiely did, however, come into contact with the truck *after* the incident, when he retrieved a piece of paper to write a statement for Reeves to sign. Also, Kiely did not come in contact with the metal sheets, except in his attempt to lift them off of Reeves with his cane and the wooden plank. Reeves' body never contacted Kiely.

Kiely timely applied to Farm Bureau, requesting PIP benefits for the medical expenses he had incurred.[3] Farm Bureau determined that under the circumstances, Kiely had no right to those

---

[3]Kiely's medical expenses exceeded the $10,000.00 policy limit.

benefits. Kiely then filed this lawsuit, alleging that he was entitled to the recovery of PIP insurance benefits.[4]

Kiely filed a motion for partial summary judgment on liability, asking the trial court to enter an order declaring that Farm Bureau had wrongly denied his PIP insurance benefits and that the Policy covered the injuries Kiely received because of the accident. Farm Bureau filed a motion for summary judgment, maintaining that Kiely had no right to PIP benefits under the Policy. The trial court denied Kiely's motion for partial summary judgment and granted Farm Bureau's motion for summary judgment. Kiely appeals.

## II. Standard of Review

Under Rule 166a(c) of the Texas Rules of Civil Procedure, summary judgment is appropriate when the movant has established that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A summary judgment that disposes of the entire case is appropriate only if it conclusively disproves at least one of the elements of each of the plaintiff's causes of action. *Id.*

The grant of summary judgment is reviewed de novo by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "In our review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor." *Bush Constr., Inc. v. Tex. Mut. Ins. Co.*, 557 S.W.3d 817, 821 (Tex. App.—Texarkana 2018, no pet.) (citing

---

[4]In his second amended petition, Kiely alleges claims of breach of contract, unfair settlement practices, breach of the duty of good faith and fair dealing, and unreasonable delay in payment of his claim.

5

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). Here, the trial court did not specify the grounds on which it granted summary judgment for Farm Bureau.

## III.    Discussion

Kiely's insurance policy provided,

A.    We will pay Personal Injury Protection benefits because of bodily injury:
    1.    resulting from a motor vehicle accident; and
    2.    sustained by a **covered person**.

Our payment will only be for losses or expenses incurred within three years from the date of the accident.

B.    Personal Injury Protection benefits consist of:
    1.    Reasonable expenses incurred for necessary medical and funeral services.
    2.    . . . Eighty percent of a **covered person's** loss of income from employment. These benefits apply only if, at the time of the accident, the **covered person**
        a.    was an income producer; and
        b.    was in an occupation statuts.

The Policy shows that PIP coverage benefits were available only to those "covered persons" who incurred injuries that stemmed from a motor vehicle accident. The Policy defines "covered person" as the policy holder or any family member "while occupying" or "when struck by . . . a motor vehicle designed for use mainly on public roads or a trailer of any type." Thus, according to the Policy, to have a right to PIP benefits, Kiely was required to show that he was injured in a motor vehicle accident, either while he was occupying a vehicle or when he was struck by a vehicle.

6

**A.      Kiely's Injuries Did Not Result from a Motor Vehicle Accident**

In Texas, we construe an insurance policy according to the rules governing contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (citing *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)).  If the language of the policy has a certain or definite legal meaning or interpretation, then it is not ambiguous, and we construe the language as a matter of law. *Id.* (citing *Kelley-Coppedge*, 980 S.W.2d at 464).

"Whether a contract is ambiguous is itself a question of law."[5]  *Id.*  The Supreme Court of Texas has held that the term "auto accident" is not ambiguous. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004); *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997) (per curiam).  Here, neither Kiely nor Farm Bureau contends that the term "motor vehicle accident" is ambiguous. Yet, they each assert a different interpretation of the term.

Keily maintains that his injuries arise from a "motor vehicle accident."  Farm Bureau argues to the contrary.  In 2004, the Texas Supreme Court explained the meaning of the term "automobile accident." *See Sturrock*, 146 S.W.3d at 129–30.  In that case, Sturrock was injured when his left foot became entangled with his car's door facing while he was exiting the vehicle.

---

[5]An ambiguity does not arise simply because the parties offer conflicting interpretations of the policy language. *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157 (citing *Kelley-Coppedge*, 980 S.W.2d at 465); *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).  Instead, "[a]n ambiguity exists only if the contract is susceptible to two or more reasonable interpretations." *Id.* (citing *Kelley-Coppedge*, 980 S.W.2d at 465).  If the language in an insurance contract is ambiguous or inconsistent, and susceptible to more than one reasonable interpretation, we resolve the uncertainty by adopting a construction that favors the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

7

*Id*. at 125.  As a result of his injuries, Sturrock filed a claim for PIP benefits under his vehicle's insurance policy, which Texas Farm Bureau had issued.  *Id.*  The insurance company declined to pay benefits, maintaining that Sturrock's injuries did not result from an automobile accident.

The trial court held that Sturrock's injuries resulted from an "automobile accident" and that they were covered by the policy's PIP provisions.  The Beaumont Court of Appeals agreed.  *Id*.  In affirming the appellate court, the Texas Supreme Court explained, "While a collision or near collision is not required, the vehicle must be more than the mere situs of the accident or injury-producing event."  *Id*. at 129 (footnote omitted) (citing *Mid-Century Ins. Co. of Tex., a Div. of Farmers Ins. Grp. of Cos. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999); *State Farm Mut. Inc. Co. v. Peck*, 900 S.W.2d 910, 913 (Tex. App.—Amarillo 1995, no writ)).  The court held

> that a "motor vehicle accident" occurs when (1) one or more vehicles are involved with another vehicle, an object, or a person, (2) the vehicle is being used, including exit and entry, as a motor vehicle, and (3) a causal connection exists between the vehicle's use and the injury-producing event.

*Id.* at 125.

Here, other than the truck being used to transport the metal sheets to Kiely's home, it was not directly involved in the circumstances leading up to Kiely's injuries.  Kiely was not exiting the vehicle or entering the vehicle when he sustained the injuries, and he was not injured while removing, or trying to remove, the metal sheets from the bed of the truck.  Instead, the "injury-producing event" occurred as a direct result of Kiely's *intentional act* of lifting the metal sheets off Reeves.

Kiely also contends that his injuries were caused from the use of a motor vehicle, which Farm Bureau disputes as well.  In *Mid-Century Insurance Co. of Texas*, *a Division of Farmers*

8

*Insurance Group of Cos. v. Lindsey*, 997 S.W.2d 153 (Tex. 1999), the Texas Supreme Court discussed what constitutes the *use* of a motor vehicle. There, the insured brought an action to recover underinsured motorist benefits for injuries from a shotgun blast caused by a child entering through the rear window of an adjacent pickup truck. *Id*. at 155. In finding that the injuries were covered under the insurance policy, the court explained that for liability to "arise out of" the use of a motor vehicle, "a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." *Id.* at 156. The court set out the following test:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id*. at 157.

Kiely points to, among other cases, *Farmers Insurance Exchange v. Rodriguez*, 366 S.W.3d 216 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In that case, appellee Rodriguez was injured while helping his neighbor, Michael Woodling, unload a deer stand from Woodling's trailer. *Id*. at 219–20. Rodriguez sued Woodling and Rodriguez's automobile insurer, appellant Allstate County Mutual Insurance Company, for negligence seeking coverage under an uninsured/underinsured motorist policy. Rodriguez later added Woodling's homeowner's insurance company, appellant Farmers Insurance Exchange, seeking liability coverage for Woodling. The trial court entered a partial summary judgment for Rodriguez, declaring that the claims were covered by both insurance policies. Later, the jury found no negligence on

Rodriquez's part, but found that Woodling was negligent and that his negligence was the cause of Rodriquez's injuries. *Id.* at 219.

On appeal, Allstate maintained that the trial court erred when it denied its motion for summary judgment against Rodriguez, granted summary judgment for Rodriguez, and declared that the under-insured motorist (UIM) language in his automobile policy covered Rodriguez's injuries. *Id*. at 224. As to the "use" exclusion, Allstate maintained that "loading and unloading" a trailer was not a "use" as contemplated under the Allstate policy and that even if it were, there was no coverage because Rodriguez's injuries did not "arise out of" the use of a trailer.

After discussing the inherent nature and natural territorial limits factors of *Lindsey*, the Houston Court of Appeals addressed the third factor, causation, that is, "whether the vehicle produced the injury." *Id*. at 228. The court explained, "The Supreme Court of Texas has stated that the causation inquiry in this context involves 'but for' causation." *Id*. (citing *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 156 (Tex. 2010) (per curiam)). "A but for cause is 'one without which the event would not have occurred.'" *Id*. (quoting *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 223 (Tex. 2010)). The court reasoned, "Rodriguez's accident would not have occurred *if Rodriguez had not been assisting Woodling* in unloading the deer stand from the trailer." *Id*. (emphasis added) (citing *Mid-Continent Cas. Co.*, 323 S.W.3d at 156) ("holding rope would not have broken and caused injuries if truck had not been used to hoist headache ball")).

The court continued, "The accident did not merely happen near the trailer: Woodling and Rodriguez could not have accomplished the same result without the presence of the trailer, and, as

we have noted, the use of a trailer *includes unloading materials*." *Id*. (emphasis added) (citing *Mid-Continent Cas. Co.*, 323 S.W.3d at 156). In the end, the court held that the UIM provisions in Rodriguez's automobile policy provided coverage for his injuries, despite the exclusion of language in the policy specifying that "loading and unloading" were considered "uses" of the motor vehicle. *Id*. at 224–25.

As we have previously noted, in this case Kiely was not injured while loading or unloading the truck. Rather, he was injured when he lifted the already unloaded metal sheets off Reeves. That said, even assuming, without finding, that Kiely could establish that his injuries were caused from the use of the truck, his claim would still fail because he has not met the other *Sturrock* elements necessary to establish that he suffered bodily injury that resulted from a motor vehicle accident. As a result, and based on the stipulated facts, we cannot find that Kiely was injured as a result of a motor vehicle accident. We therefore overrule Kiely's first point of error.

### B. Kiely Was Not Occupying the Vehicle

Farm Bureau maintains that the trial court's summary judgment in its favor was appropriate because Kiely was neither occupying the vehicle when he sustained his injuries nor struck by the vehicle. For those reasons, according to Farm Bureau, Kiely was not a "covered person" entitled to PIP benefits under the Policy. Kiely, on the other hand, cites *Lindsey* for the proposition that he was "using" the truck at the time of the accident.

The Policy specifically defines "covered person" as the policy holder "or any family member . . . while occupying . . . or . . . when struck by . . . a motor vehicle . . . ." According to the Policy, "occupying" means "in, upon, getting in, on, out or off."

11

Here, the stipulated facts show that Kiely never touched the outside of the truck, including the bed of the truck. Kiely neither entered the truck nor exited the truck until after the incident occurred. Nor was he struck by the truck. For these reasons, Kiely was not a "covered person" under the Policy and was therefore not entitled to PIP benefits. We overrule Kiely's second point of error.

### C. Kiely Had No Right to Extra-Contractual Damages

Citing Section 1952.157 of the Texas Insurance Code, Kiely also contends that he was "entitled to extra[-]contractual damages due to [Farm Bureau]'s breach of the PIP contract." *See* TEX. INS. CODE ANN. § 1952.157. Section 1952.157 states,

> (a) If the insurer fails to pay benefits under the coverage required by this subchapter when due, the person entitled to those benefits may bring an action in contract to recover the benefits.

> (b) If the insurer is required to pay benefits described by Subsection (a), the person entitled to the benefits is entitled to recover reasonable attorney's fees, a penalty of 12 percent, and interest at the legal rate from the date those amounts become overdue.

TEX. INS. CODE ANN. § 1952.157. Because Farm Bureau did not have to pay PIP benefits to Kiely, his claim for extra-contractual benefits is meritless.

We overrule Kiely's third point of error.

12

## IV.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     June 5, 2019
Date Decided:       July 22, 2019