**Affirmed in part, reversed in part and Memorandum Opinion filed July 15, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00113-CV

### BREWER & PRITCHARD, P.C., Appellant

### V.

### AMKO RESOURCES INTERNATIONAL, LLC AND JOHN I. MYUNG, Appellee

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2010-49284**

## M E M O R A N D U M   O P I N I O N

Brewer & Pritchard, L.P. ("B&P") sued AMKO Resources International, LLC ("AMKO") and Dr. John I. Myung for tortious interference with an existing contract,[1] conversion, and civil conspiracy.[2] In five issues, B&P appeals each

---

[1] B&P brought a claim for "interference with existing contract and a business relationship." Identifying a potential ambiguity in B&P's naming convention, AMKO and Dr.

ground on which the trial court may have granted AMKO's and Dr. Myung's traditional motions for summary judgment. We affirm in part and reverse and remand in part.

## I.   Facts & Procedural Background

In 2008, Strategic Petroleum Investment Consultants Enterprise, Inc. ("SPICE") was contemplating the disposition of its interests in oil and gas leases located in Cooke, Denton, Montague, and Wise Counties. An operator of a number of the leases in question unilaterally terminated SPICE's interests. SPICE hired B&P to resolve the dispute with the operator. SPICE and B&P entered into a

---

Myung presume in their briefs that B&P only intended to assert a claim for tortious interference with an existing contract because they believe B&P conflated tortious interference with an existing contract with tortious interference with prospective relations. Claims for tortious interference with business relationships and tortious interference with prospective contractual relations only apply to (1) business relations that have not yet been reduced to a formal contract, or (2) a continuing business relationship that does not amount to a formal contract. *Heil-Quaker Corp. v. Mischer Corp.*, 863 S.W.2d 210, 214 (Tex. App.—Houston [14th Dist.] 1993) (citing Restatement (Second) of Torts § 766B, cmts. a, c (1979)), *writ granted w.r.m.*, 877 S.W.2d 300 (Tex. 1994); *see Faucette v. Chantos*, 322 S.W.3d 901, 915 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because the business relationship between SPICE and B&P was reduced to a formal contract, we interpret B&P's claim as one for tortious interference with an existing contract.

[2] B&P's pleadings only allege that AMKO and Dr. Myung conspired to commit tortious interference. Civil conspiracy is considered a derivative tort because a defendant's liability depends on its participation in an underlying tort. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). To prevail on a civil conspiracy claim, a plaintiff must prove that the defendant was liable for an underlying tort. *Id.* If a defendant is entitled to summary judgment on the underlying tort, then the defendant cannot be liable for the conspiracy to commit the underlying tort. *See, e.g.*, *id.* (because the trial court properly granted summary judgment on plaintiff's tortious interference claims, defendants could not be liable for civil conspiracy to commit tortious interference). Thus, if we conclude that the trial court properly granted summary judgment on B&P's tortious interference claim, then B&P's civil conspiracy claim must fail as well. Furthermore, because neither AMKO nor Dr. Myung sought summary judgment on the civil conspiracy claim separately, we conclude that if, as a result of our analysis in this case, B&P's tortious interference claim survives summary judgment, then B&P's civil conspiracy claim must survive as well. In other words, our tortious interference analyses necessarily dictate the disposition of the civil conspiracy claim.

2

contingent fee agreement dated June 10, 2008.[3] On July 22, 2008, B&P succeeded in negotiating a settlement in which the operator agreed to restore SPICE's lease interests in return for a release. On the same day, SPICE sold 67.5% of its interest in the disputed properties to AMKO for $27 million pursuant to a Purchase Sale Agreement (the "PSA"). B&P notified AMKO of its contingent-fee interest and provided AMKO with instructions on transferring 15% of the purchase price to B&P's bank. AMKO paid the full $27 million to SPICE.

Believing it was entitled to 15% of SPICE's oil and gas interests and therefore 15% of the $27 million, B&P initiated arbitration against SPICE for breach of the fee agreement. On December 30, 2008, the arbitrator found that SPICE had breached the fee agreement. The arbitrator awarded B&P $4,050,000 plus fees and interest. A trial court entered judgment confirming the arbitration award on January 20, 2009. The total amount of the judgment, including fees and costs but excluding interest, was $4,112,126.90. On March 5, 2009, B&P and SPICE settled their fee-agreement dispute. In return for SPICE's payment of $1 million in "full satisfaction" of the judgment, B&P agreed to release the judgment lien against SPICE.

On August 9, 2010, B&P sued AMKO and Dr. Myung, AMKO's managing member at the time of the alleged wrongdoing, for tortious interference with contract, business disparagement, and conspiracy. B&P amended its petition in February 2011, dropping the business disparagement claim and adding a conversion claim. Dr. Myung and AMKO filed traditional motions for summary judgment. Dr. Myung limited the grounds for his summary judgment argument to

---

[3] The contract specifically stated that B&P was entitled to "a percentage of the 'Gross Recovery' . . ., according to the following schedule: (a) 15% of all sums collected on or before July 31, 2008 . . . ." "Gross Recovery" is defined in the agreement as "the sum of any and all sums of money, notes or other property, real or personal, tangible or intangible, of any kind or nature, received from any party."

the one satisfaction rule. AMKO sought summary judgment on four affirmative defenses: (1) the one satisfaction rule, (2) res judicata, (3) justification, and (4) waiver.[4] AMKO also attacked B&P's conversion claim in its motion.

The trial court issued two summary judgment orders. On November 12, 2012, the trial court granted Dr. Myung's motion for summary judgment solely on one-satisfaction grounds. On the same day and without specifying its grounds for doing so, the trial court separately granted AMKO's motion for summary judgment. B&P timely appealed both summary judgment orders.

## II.    Summary Judgment Standard of Review

We review de novo the trial court's granting of a traditional motion for summary judgment. *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 221 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). We must take as true evidence favorable to the non-movant. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996). To prevail on a motion for summary judgment, a defendant must either conclusively negate at least one element of each of the plaintiff's causes of action or conclusively establish each element of any affirmative defense that was before the trial court. *Id.* A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *Rodriguez*, 366 S.W.3d at 221. "When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (quoting *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)) (internal quotations omitted).

---

[4] At oral argument, AMKO abandoned its waiver defense. Therefore, we do not address it here.

4

Because this appeal involves two separate summary judgment orders, we begin by analyzing whether the trial court properly granted summary judgment in favor of Dr. Myung on the one satisfaction rule. We then address whether the trial court properly granted summary judgment on any of the bases articulated by AMKO.

### III. Dr. Myung's Motion for Summary Judgment

#### A. One Satisfaction Rule

"The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *see also Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). Under this rule, a plaintiff is entitled to one recovery for damages suffered when multiple defendants commit the same act as well as when multiple defendants commit technically different acts resulting in a single injury. *Casteel*, 22 S.W.3d at 390. A court can grant summary judgment based on the one satisfaction rule. *See El Paso Natural Gas Co. v. Berryman*, 858 S.W.2d 362, 363 (Tex. 1993) (per curiam). The one satisfaction rule is grounds for granting summary judgment when (1) the one satisfaction rule applies, (2) the credit sought by the defendant entirely sets off the maximum compensatory liability claimed by the plaintiff, and (3) punitive damages are not at issue. *Cohen v. Arthur Andersen, L.L.P.*, 106 S.W.3d 304, 309–10 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

B&P argues that it "never obtained full satisfaction of its damages" and that the one satisfaction rule, therefore, only entitles Dr. Myung, the non-settling defendant, to an offset or credit. According to B&P, "the one satisfaction rule prevents double recovery, but it does not prevent full recovery." "Full recovery" to B&P means that it is entitled to at least $3,112,126.90—the difference between the judgment amount and the settlement amount. B&P contends that it is entitled to

pursue other wrongdoers for that amount. Dr. Myung responds that B&P's only injury was SPICE's breach of the fee agreement, and because B&P and SPICE fully settled their contract dispute, it would violate the one satisfaction rule to award B&P the difference between the judgment amount and the settlement amount.

We first address a preliminary issue: whether the one satisfaction rule applies to B&P's conversion claim. We will then assess whether, in relation to B&P's tortious interference and conspiracy claims, Dr. Myung was entitled to summary judgment on one satisfaction grounds.

### 1. *The one satisfaction rule does not apply to B&P's conversion claim.*

In support of his contention that the one satisfaction rule applies to all of B&P's claims, Dr. Myung compares the measures of damages for each of B&P's claims. The purpose of this comparison is ostensibly to prove that B&P suffered only one injury by showing that the measures of damages for each of B&P's claims are indistinguishable from each other. We disagree with Dr. Myung's argument to the extent that it applies to B&P's conversion claim.

The injury that results from tortious interference is different from the injury that results from conversion because the interests each claim vindicates are distinct. The tortious interference causes of action are designed to protect the plaintiff's interest in his contractual rights and expectancies and to protect the relationship between the parties to a contract. *See* Restatement (Second) of Torts § 766 cmt. c (1979) (discussing the history of tortious interference); 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* §§ 605, 616 (2d ed. 2011) ("[E]conomic torts [such as tortious interference] inflict pecuniary or financial costs upon the plaintiff that do not result from injury to person or property . . . .

[T]orts to the person and torts to tangible [personal] property are not economic torts and come under none of the strictures applied to economic tort claims."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129 (5th ed. 1984) (interference with contract is part of larger body of tort law aimed at protecting economic relationships); John A. Conway & Eve L. Pouliot, *Annual Survey of Texas Law: Business Torts*, 48 SMU L. Rev. 919, 920 (1995).

The damages resulting from tortious interference claims are generally measured by the "benefit of the bargain"—that is, the damages for both breach of contract and tortious interference are designed to "put the plaintiff in the same economic position he would have been in had the contract . . . been actually performed." *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990); *see also Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 219 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

In contrast, the conversion cause of action is intended to vindicate individual property rights, and conversion damages are generally measured by market value, loss of use, or rental value. *See United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147–148 (Tex. 1997) (per curiam); *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706, 710 (Tex. App.—Dallas 2012, no pet.); *Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 862–63 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also* Restatement (Second) of Torts § 222A cmt. a (1965) (discussing origins of conversion); 15 Tex. Jur. 3d *Conversion* §§ 1, 55 (2013).

The First Court of Appeals' decision in *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107 (Tex. App.—Houston [1st Dist.] 2012, pet. denied), is illustrative. In that case, the plaintiff won a judgment for breach of contract against a

manufacturer for failing to deliver a mud pump. *Krobar Drilling, L.L.C.*, 426 S.W.3d at 110–11. The plaintiff was unable to collect. *Id.* at 110. The plaintiff then initiated a conversion suit against the company that was storing the mud pump on behalf of the manufacturer. *Id.* The court of appeals reversed the trial court, holding that the one satisfaction rule applies only when a judgment is satisfied. *Id.* at 112. Like this case, *Krobar Drilling, L.L.C.* involved a breach of contract claim and a subsequent claim for conversion, but unlike this case, both the contract claim and the tort claim in *Krobar Drilling, L.L.C.* sought the vindication of the plaintiff's right to a piece of property, the mud pump. Additionally, the value of the mud pump was equivalent to the value of the contract. *See id.* at 110–11. In this case, B&P is trying to vindicate the business and contractual rights that arose from its contingent fee agreement with SPICE while simultaneously trying to vindicate its alleged right to possess a portion of the personal property conveyed to AMKO in the PSA.[5] Furthermore, because the record does not contain evidence regarding the value of the personal property, we cannot determine whether the value of the personal property is the same as the value of the contingent-fee agreement.

We conclude that the one satisfaction rule does not apply to B&P's conversion claim because, in this case, the nature of the injury and the measure of damages for conversion are different from the nature of the injury and the measure of damages for breach of contract and tortious interference.

### 2. *The one satisfaction rule applies to B&P's tortious interference and conspiracy claims because B&P suffered a single injury.*

We must now decide whether the one satisfaction rule applies to B&P's

---

[5] The PSA conveyed SPICE's interests only to AMKO. However, B&P alleged in its pleadings that both AMKO and Dr. Myung committed conversion.

8

tortious interference and conspiracy claims,[6] which requires a determination that B&P has suffered only one injury. For two reasons, we conclude that B&P has suffered only one injury. First, B&P has not attempted to distinguish between the damages it suffered as a result of SPICE's, AMKO's, and Dr. Myung's alleged wrongdoing. *See Lundy v. Masson*, 260 S.W.3d 482, 506 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303–04 (Tex. 2006) (court of appeals violated the one satisfaction rule when it awarded economic damages for all of the plaintiff's causes of action because the economic damages for each cause of action were the same); *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184–85 (Tex. 1998) (per curiam) (in action against insurance company, jury awarded identical amounts in response to questions about contract and tort damages; out-of-pocket expenses paid by plaintiff and breach of insurance policy by defendant were a single injury); *Stewart Title*, 822 S.W.2d at 8 (multiple defendants' misrepresentations that led plaintiff to purchase land without good title resulted in a single harm and identical damages); *Stauffacher v. Coadum Capital Fund 1, LLC*, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (a request that the jury award the same amount of damages for breach of contract and breach of fiduciary duty "belie[d] the reality that the two questions were alternative theories of the same case" and recovery for both would have violated one satisfaction rule). B&P answered in the affirmative when asked in deposition if it was seeking to recover the difference between the arbitration award and the settlement amount. B&P has not strayed from seeking that amount both in its

---

[6] If the one satisfaction rule applies to the tortious interference claim, then the rule would also apply to the civil conspiracy claim because (1) as a derivative tort, the injury resulting from the conspiracy is the same as the injury resulting from the underlying tort and (2) the damages resulting from the conspiracy are based on the damages resulting from the commission of the underlying tort. *See Hart v. Moore*, 952 S.W.2d 90, 98 (Tex. App.—Amarillo 1997, pet. denied).

responses to Dr. Myung's motion for summary judgment and in its appellate briefs. B&P wants to recover the full amount awarded by the arbitrator and is seeking that same measure of damages, albeit reduced by $1 million, under alternate theories of the same case.

Second, B&P has referred to the same conduct by SPICE, AMKO, and Dr. Myung as evidence that Dr. Myung committed tortious interference. *See Lundy*, 260 S.W.3d at 506; *see, e.g.*, *Galle, Inc. v. Pool*, 262 S.W.3d 564, 574 (Tex. App.—Austin 2008, pet. denied) (damages sought by plaintiffs against settling defendants and damages awarded by jury against non-settling defendants all arose from the proliferation of mold that followed one defendant's work on the plaintiff's house); *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 315 (Tex. App.—Dallas 2006, no pet.) (plaintiff's tort and contract causes of action arose from a single injury—defendants' failure to provide a functional heating element); *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 206 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (plaintiff's suit for conversion, negligence, gross negligence, tortious interference with contract, and money had and received was based on defendant-bank's acceptance of checks with missing indorsements, resulting in a single injury—the temporary loss of money); *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 590 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (in DTPA lawsuit against manufacturer, plaintiffs who settled with retailer could not recover from manufacturer because a defective mobile home was the only injury and "[t]he same core evidence that was used against [m]anufacturer could have been used against [r]etailer"); *LJ Charter, L.L.C. v. Air Am. Jet Charter, Inc.*, No. 14-08-00534-CV, 2009 WL 4794242, at *8 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, pet. denied) (mem. op.) (plaintiff's actions for breach of joint-venture fiduciary duty and fraud were the

same injury because they were based on proof of the same facts).

B&P has consistently pointed to the failure of SPICE, AMKO, and Dr. Myung to pay B&P 15% of the $27 million PSA purchase price. In an August 7, 2008 letter addressed to AMKO and Dr. Myung that specifically referred to the PSA, B&P declared that it owned "a 15% interest in any consideration paid by [AMKO] to [SPICE], including but not limited to the [PSA] 'payment price.'" In an August 13, 2008 email, B&P notified SPICE that it would be submitting its claim for the contingent fee to an arbitrator. The arbitrator ultimately awarded $4,050,000 in contract damages, not including interest and fees, to B&P. That amount is 15% of the $27 million PSA purchase price. Furthermore, B&P's pleadings allege that it was owed 15% of the PSA purchase price and that Dr. Myung's acts prevented B&P from obtaining payment for its legal services. From these facts, we conclude that B&P's contract and tort claims in this case arise from the same conduct—SPICE's, AMKO's and Dr. Myung's decision not to pay B&P. That conduct caused a single injury to B&P—the loss of its contingent fee.

B&P suffered only one injury. The one satisfaction rule applies to the tortious interference and conspiracy claims in this case.

### 3. *The settlement amount received by B&P fully satisfied its claim for compensatory damages arising from SPICE's breach of the contingent fee agreement.*

The one satisfaction rule "prevents a claimant from recovering more than the amount required for full satisfaction of his damages." *Berryman*, 858 S.W.2d at 364.[7] Because AMKO and Dr. Myung are asserting that the settlement agreement

---

[7] While we acknowledge that many of the cases addressing this issue involve multiple defendants and joint liability, we have found nothing in the Texas Supreme Court jurisprudence limiting the one satisfaction rule's applicability to that class of cases. *See Casteel*, 22 S.W.3d at 390; *T.L. James & Co. v. Statham*, 558 S.W.2d 865, 869 (Tex. 1977) ("The rule is applied to

fully satisfied B&P's claims for compensatory damages, they must prove as a matter of law that they are entitled to a credit equaling the entire amount awarded to B&P in its arbitration with SPICE. *See Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998); *Cohen*, 106 S.W.3d at 310.

B&P was fully satisfied for its injury when it settled its dispute with SPICE and released its judgment lien against SPICE. Again, the First Court of Appeals' decision in *Krobar Drilling, L.L.C.* is analogous because, like this case, it involved a plaintiff that sued one defendant for breach of contract and subsequently sued another defendant in tort. The plaintiff in *Krobar Drilling, L.L.C.* was unable to collect on a judgment in its breach-of-contract suit against the manufacturer of a mud pump. 426 S.W.3d at 110. The plaintiff then sued the owner of the warehouse where the mud pump was stored, alleging conversion and claims under the Texas Theft Liability Act. *Id.* The trial court granted the warehouse owner's motion for directed verdict on one satisfaction grounds. *Id.* at 111. The First Court of Appeals reversed and remanded, noting that "it is the *satisfaction* of a judgment, not the *obtaining* of a judgment, that bars further suits." *Id.* at 112 (citing *T.L. James & Co., Inc. v. Statham*, 558 S.W.2d 865, 868–69 (Tex. 1977)); *see also Burchfield v. Prosperity Bank*, 408 S.W.3d 542, 548 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (following *Krobar Drilling, L.L.C.*). In this case, B&P sued SPICE for breach of contract. B&P obtained a $4,112,126.90 judgment and ultimately settled with SPICE for $1 million. The settlement agreement reads, in pertinent part: "We

joint tort-feasors because of the fundamental fact that there is but a single injury . . . ." (quoting *Hunt v. Ziegler*, 271 S.W. 936, 938 (Tex. Civ. App.—San Antonio 1925), *aff'd*, 280 S.W. 546 (Tex. 1926) (internal quotations omitted))). The concept of prohibiting double recovery for the same injury applies equally in cases like this one in which a plaintiff is disappointed with a result in a prior lawsuit and seeks to alleviate that disappointment in a subsequent lawsuit against a different defendant. *See Krobar Drilling, L.L.C.*, 426 S.W.3d at 112 ("When . . . it is alleged that a breach of contract and a tort caused a single injury, the rationale behind the 'one-satisfaction rule' permitting successive suits against joint-tortfeasors until a judgment is satisfied is equally applicable.").

[B&P] agree to accept One Million Dollars ($1,000,000) in *full satisfaction of the judgment* in plaintiff's [B&P's] favor . . . ." (emphasis added). B&P actually received payment and released its judgment lien.[8] After receiving the payment from SPICE, B&P sued AMKO and Dr. Myung in tort, seeking what it calls "full recovery"—the difference between the judgment amount and the settlement amount. In contrast to the plaintiff in *Krobar Drilling*, B&P not only obtained a judgment but it also obtained full satisfaction of the judgment. Having been fully satisfied, B&P cannot recover compensatory damages a second time for its single injury. *See Berryman*, 858 S.W.2d at 364.

### 4. *Punitive damages are still at issue.*

Referring to the general rule that an award of compensatory damages is a prerequisite to a recovery of punitive damages, Dr. Myung argues that because B&P already recovered compensatory damages in the breach of contract litigation, B&P cannot recover punitive damages against Dr. Myung once the full $4,112,126.90 credit resulting from B&P's $1 million settlement and release of judgment is applied. Therefore, according to Dr. Myung, punitive damages are not at issue. We disagree.

"The 'one satisfaction rule' is usually inapplicable to punitive damage awards because punitive damages do not concern compensation; they are, instead, intended to punish the wrongdoer and to deter future similar acts." *Universal*

---

[8] The release stated:

> On March 5, 2009, the parties entered into a settlement agreement whereby [B&P] agreed to accept $1,000,000 in *full satisfaction of the judgment* in plaintiff's favor dated January 20, 2009, and it further agreed to release its judgment against SPICE upon timely performance of all payment obligations in the parties' agreement. . . . *The payment obligation of SPICE under the March 5, 2009 agreement having been timely performed*, [B&P] does hereby release the January 20, 2009 judgment against SPICE . . . ." (emphasis added).

*Servs. Co. v. Ung*, 882 S.W.2d 460, 467 (Tex. App.—Houston [14th Dist.] 1994), *rev'd on other grounds*, 904 S.W.2d 638 (Tex. 1995); *see Casteel*, 22 S.W.3d at 391 ("A nonsettling defendant cannot receive credit for settlement amounts representing punitive damages."); *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 804 (5th Cir. 1983) ("The purpose of the [one satisfaction] rule is to ensure that a plaintiff receives no more than full compensation for his loss. A plaintiff awarded punitive damages has been given the right to receive more than 'one satisfaction.'" (citations omitted)). Punitive damage calculations are based on the *award* of compensatory damages, not the amount actually recovered. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a) (West 2008); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 458 (Tex. App.—El Paso 2006, no pet.). Consequently, a plaintiff would be entitled to recover punitive damages based on an award of compensatory damages even though his ability to recover compensatory damages is entirely offset by a credit based on the one satisfaction rule. *See Gilcrease*, 211 S.W.3d at 458–59.

Here, Dr. Myung concedes that B&P was awarded compensatory damages in the breach of contract suit against SPICE, and we agree with Dr. Myung that B&P was fully satisfied for those damages when it settled with SPICE. But B&P sought punitive damages in its live petition and continues to assert its right to punitive damages in its appellate briefs. Punitive damages are recoverable for torts such as tortious interference, conspiracy, and conversion if the plaintiff can prove the requisite state of mind, but they are not available for breach of contract. *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012); *see* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 2011) (to recover punitive damages, claimant must prove by clear and convincing evidence that the harm resulted from fraud, malice, or gross negligence). Because the settlement agreement between

SPICE and B&P, which resolved only the breach of contract claim, did not expressly resolve B&P's potential claims for punitive damages, the agreement could not have disposed of B&P's claims for punitive damages in this tort lawsuit. *Cf.*, *Ellender*, 968 S.W.2d at 928 (settlement agreement explicitly released actual and punitive damage claims). Therefore, AMKO and Dr. Myung have not shown that punitive damages are not at issue. *See Matthews v. Sohn*, No. 13-12-00302-CV, 2013 WL 2949562, at *5 (Tex. App.—Corpus Christi June 13, 2013, no pet.) (mem. op.); *see also Hart*, 952 S.W.2d at 98 (the existence of a civil conspiracy cannot alone justify punitive damages but can be a basis for imposing punitive damages based on an award of actual damages).

## B.    Holding as to Myung

With respect to B&P's tortious interference and conspiracy claims, the trial court erred when it granted summary judgment in favor of Dr. Myung on the one satisfaction rule because punitive damages are still at issue. *See Cohen*, 106 S.W.3d at 309–10. With respect to B&P's conversion claim, the trial court erred when it granted summary judgment in favor of Dr. Myung on the one satisfaction rule because the one satisfaction rule does not apply to the conversion claims in this case. Bearing these conclusions in mind, B&P's first issue is sustained as to Dr. Myung's motion for summary judgment. Therefore, we reverse the trial court's order granting Dr. Myung's motion for summary judgment and remand this cause to the trial court for proceedings consistent with this opinion. *See Matthews*, 2013 WL 2949562, at *6.

We now consider AMKO's motion for summary judgment.

## IV. AMKO's Motion for Summary Judgment

### A. One Satisfaction Rule

Because AMKO and Dr. Myung make identical arguments on the one-satisfaction-rule issue, we incorporate by reference our analysis from Section III.A of this opinion. Therefore, we conclude as follows: With respect to B&P's tortious interference and conspiracy claims, the trial court erred when it granted summary judgment in favor of AMKO on the one satisfaction rule because punitive damages are still at issue. *See Cohen*, 106 S.W.3d at 309–10. With respect to B&P's conversion claim, the trial court erred when it granted summary judgment in favor of AMKO on the one satisfaction rule because the one satisfaction rule does not apply to the conversion claims in this case.

Bearing these conclusions in mind and to the extent the trial court granted summary judgment in favor of AMKO on one-satisfaction-rule grounds, we sustain B&P's first issue.

### B. Conversion

In its third issue, B&P challenges the trial court's granting of summary judgment on its conversion claim. B&P contended that as a result of its successful negotiations on behalf of SPICE, B&P acquired an equitable interest in the oil and gas properties that SPICE recovered in the settlement with the operator that cancelled SPICE's oil and gas interests. According to B&P, its equitable interest was conveyed in the PSA from SPICE to AMKO, and AMKO committed conversion by executing the PSA and claiming ownership of the subject assets. Particularly, B&P claimed that AMKO committed conversion when it (1) asserted ownership of the oil and gas leasehold interests conveyed in the PSA; (2) refused to pay B&P 15% of the $27 million PSA consideration; and (3) asserted ownership

16

of the personal property conveyed in the PSA, specifically the equipment contemplated by Paragraph 1(d). In response, AMKO argues (1) that the oil and gas leasehold interests are real property interests incapable of being converted; (2) that while B&P may have had a claim against SPICE for a percentage of the $27 million, AMKO rightfully owned and possessed the money until it was transferred to SPICE; and (3) that B&P did not establish its ownership of or possessory rights to the equipment. Although we agree with AMKO on (1) and (2), we conclude with regard to (3) that AMKO did not conclusively negate B&P's claim that AMKO converted the personal property contemplated in paragraph 1(d) of the PSA.

Conversion is the wrongful exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). A plaintiff suing for conversion must prove that (1) the plaintiff owned, possessed, or had the right to immediate possession of personal property; (2) the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, (3) the defendant refused plaintiff's demand for return of the property; and (4) the plaintiff suffered injury. *Cluck v. Mecom*, 401 S.W.3d 110, 116 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

### 1. *Conversion of oil and gas leasehold interests and working interests*

In its motion for summary judgment, AMKO argued that B&P's conversion claim must fail because oil and gas leases and royalty interests are real property interests as a matter of law. In response, B&P contended that working interests and

17

related leasehold interests are personal property and "routinely the subject of conversion claims under Texas law."

"An oil and gas lease is both a contract and a conveyance of an interest in real property." *Browning Oil Co., Inc. v. Luecke*, 38 S.W.3d 625, 643 (Tex. App.—Austin 2000, pet. denied). A royalty interest in an oil and gas lease is also an interest in real property. *Lyle v. Jane Guinn Revocable Trust*, 365 S.W.3d 341, 351 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Oil and gas become personal property once they are severed from the real property. *See Humble Oil & Refining Co. v. West*, 508 S.W.2d 812, 817 (Tex. 1974). Under paragraph 1(a) of the PSA, SPICE conveyed 67.5% of its oil and gas leasehold interests and its working interests to AMKO. SPICE did not convey any severed oil or gas under the PSA. B&P's claim for conversion on the theory that oil and gas leases and royalty interests are personal property fails as a matter of law.[9]

### 2.   *Conversion of money allegedly owed to B&P*

In its second amended petition, B&P alleged that AMKO and Dr. Myung converted funds that were owed to B&P because AMKO and Dr. Myung refused to comply with B&P's demand for 15% of the PSA consideration. In *Rente Co. v. Truckers Express, Inc.*, the plaintiff sued for conversion when the defendant did not pay money owed under an equipment lease. 116 S.W.3d 326, 332 (Tex. App.—Houston [14th Dist.] 2003, no pet.). This court held that indebtedness is not

---

[9] We note that while oil and gas interests are generally real property, it is possible to convert the lease documents that define those interests. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) ("The lessee's rights under a lease are treated in law as personal property. The conversion of the document in which the rights had been merged supports a conversion action for the value of the rights represented by it."); *Robin Singh Educ. Servs., Inc.*, 401 S.W.3d at 97–98; *see also* 15 Tex. Jur. 3d *Conversion* § 23 (2013) ("[A]n action lies in conversion of intangible contract rights even when the contract relates to real property."). B&P did not allege in its pleadings or on appeal that AMKO or Dr. Myung converted the documents in which its alleged rights had been merged.

specific chattels capable of being converted. *Id.* In this case, if AMKO and Dr. Myung actually owed B&P 15% of the PSA consideration, then the alleged amount of indebtedness was capable of being discharged by the payment of money generally, and B&P's claim for conversion under a theory of indebtedness must fail as a matter of law. *See id.*

### 3. *Conversion of equipment conveyed under the PSA*

B&P also claims that AMKO and Dr. Myung converted the equipment that SPICE conveyed under paragraph 1(d) of the PSA.[10] AMKO responds that B&P did not establish that it owned the equipment, that it possessed the equipment, or that it had the right to immediately possess the equipment. But to prevail on a summary judgment, AMKO, not B&P, had the burden of producing conclusive evidence that B&P lacked the requisite ownership or possessory rights to the equipment. *See Friendswood Dev. Co.*, 926 S.W.2d at 282. The only evidence that AMKO produced regarding property ownership was the affidavit of Michael Jones, the lawyer who represented AMKO in the PSA transaction with SPICE. Jones stated:

> A Lis Pendens on the Purchased Property notifying the public of litigation or arbitration between Brewer & Pritchard, P.C. and Strategic Petroleum Investment Consultants Enterprise was not filed prior to the July 22, 2008 Purchase and Sale Agreement, nor was a Lis Pendens filed prior to the assignment of the assets to AMKO acquired

---

[10] Paragraph 1(d) provides that SPICE will convey to AMKO 67.5% of its interests in:

> the personal property, improvements, fixtures, facilities, wells . . ., gathering lines, flow lines, injection lines, pipelines, tanks, boilers, buildings, machinery, equipment . . ., inventory, pipelines, utility lines, power lines, roads and other appurtenances, to the extent the same are situated upon and used or held for use by Seller [SPICE] solely in connection with the ownership, operation, maintenance or repair of the interests which are described in Exhibit 'A', or the production of oil, gas, or other hydrocarbon and non-hydrocarbon substances attributable thereto.

under the July 22, 2008 Purchase and Sale Agreement, to my Affidavit.

The lis pendens rule only applies to interests in real property. *See* Tex. Prop. Code Ann. § 12.007(a) (West 2011). Therefore, Jones's statement is not conclusive evidence negating the right-of-possession element of B&P's conversion claim as it relates to the personal property conveyed under the PSA. Moreover, AMKO did not prove in its motion that the personal property at issue had become real property by virtue of its status as a "fixture" upon the real property, nor did AMKO prove that it did not move or "carry off" the personal property.

The trial court erred only to the extent that it granted summary judgment in favor of AMKO on B&P's claim that AMKO and Dr. Myung converted the personal property that was conveyed to AMKO in paragraph 1(d) of the PSA. Accordingly, B&P's third issue is sustained in part.

## C.    Res Judicata

In its fourth issue, B&P challenges the trial court's granting of summary judgment on res judicata grounds. A party claiming the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 387 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Neither AMKO nor B&P disputes the existence of a prior determination on the merits. B&P argues, however, that AMKO and SPICE were not in privity and that it could not have forced AMKO to arbitrate the tort claims in the prior arbitration with SPICE. AMKO responds that it was in privity with SPICE and that because B&P's tort claims are based on the same operative

facts and are inherently inseparable from the breach-of-contract claim, B&P could have compelled AMKO to arbitrate the tort claims. Without deciding the privity issue, we conclude that B&P could not have compelled AMKO to arbitrate B&P's tort claims.

The issue here is whether a signatory-plaintiff that previously arbitrated a claim with a signatory-defendant could have also compelled an unaffiliated non-signatory to arbitrate the signatory-plaintiff's tort claims against the non-signatory. In short, the answer is no.

Six theories may bind non-signatories like AMKO to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). The only applicable theory in this case is equitable estoppel. Two types of equitable estoppel exist: concerted-misconduct estoppel and direct-benefits estoppel. Texas courts have not adopted the theory of concerted-misconduct estoppel. *See Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 59 (Tex. App.—El Paso 2012, pet. denied) (citing *In re Merrill Lynch Trust Co.*, 235 S.W.3d 185, 192 (Tex. 2007) (orig. proceeding)); *In re Credit Suisse First Bos. Mortg. Capital, L.L.C.*, 257 S.W.3d 486, 492 n.5 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Therefore, we must determine whether B&P's tort claims were arbitrable under a theory of direct-benefits estoppel. *See In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (per curiam) (orig. proceeding); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 741 ("[A] non-signatory should be compelled to arbitrate a claim only if it seeks . . . to derive a direct benefit from the contract containing the arbitration provision."). Under direct-benefits estoppel, nonparties must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general

21

obligations imposed by law. *In re Vesta Ins. Grp.*, 192 S.W.3d at 761.

With these concepts in mind, we first address B&P's tortious interference and conspiracy claims.[11] Tortious interference claims do not fall comfortably within either category because liability arises from the general law but non-liability arises from connections with the contract. *Id.* at 761–62. Tortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory, however, arise more from the contract than general law. *Id.* at 762. As such, those claims fall on the arbitration side of the scale. *Id.* Thus, a signatory-plaintiff who sues the non-signatory agents or affiliates of the other signatory for tortious interference must arbitrate her claim. *See, e.g.*, *id.* (signatory-plaintiff whose contract was terminated by insurer had to arbitrate tortious interference claims against non-signatories that were agents or affiliates of the insurer); *Glassell Producing Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (tort and contract claims against president of signatory company were subject to arbitration clause in letter agreement); *PER Grp., L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 387 (Tex. App.—Dallas 2009, no pet.) (nonsignatory-affiliate of signatory-plaintiff was required to arbitrate tortious interference claims against signatory-defendants). In contrast, a signatory-plaintiff is not required to arbitrate a tortious interference claim against a complete stranger to the contract (and its arbitration clause) because that claim would arise from obligations imposed by law rather than from connections to the contract. *See In re Vesta Ins. Grp.*, 192 S.W.3d at 763 ("We agree . . . that [the signatory-plaintiff] would not be required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause."). In this case, AMKO is not affiliated with SPICE and is a stranger to the arbitration clause contained in

[11] We analyze the tortious interference claim with the conspiracy claim because AMKO's liability for conspiracy is dependent upon its liability for tortious interference.

22

the contingent fee agreement. Therefore, we conclude that B&P could not have compelled AMKO to arbitrate the tortious interference claim, as surely as AMKO could not have compelled B&P to arbitrate the tortious interference claim.

We now address B&P's conversion claim. We conclude that neither B&P nor AMKO could have compelled the other to arbitrate the conversion claims because AMKO's potential liability for conversion does not arise from either party's connections to the contingent-fee agreement. *See id.* at 762.

The trial court erred to the extent that it granted summary judgment on res judicata grounds. B&P's fourth issue is sustained.

### D.    Justification[12]

In its second issue, B&P challenges the trial court's granting of summary judgment on justification grounds. B&P argues that the PSA, executed after the fee agreement, cannot operate as a justification for interfering or conspiring to interfere with the existing fee agreement because allowing the justification defense would permit a tortfeasor to circumvent liability simply by creating a subsequent contract that relieves it of liability. B&P further argues that the PSA contained a condition precedent requiring SPICE to obtain all necessary written consents before AMKO was obligated to perform. Since the contingent-fee agreement required SPICE to obtain consent from B&P and since SPICE did not do so, B&P asserts that AMKO was not justified in performing its obligations under the PSA.

AMKO responds that the PSA required it to pay SPICE the $27 million and that this obligation had nothing to do with B&P or B&P's fee agreement with SPICE. AMKO was therefore justified in ignoring B&P's notice letter and making

---

[12] AMKO sought summary judgment on the justification defense with respect to B&P's tortious interference and civil conspiracy claims only.

the payment, despite conditions in the contract that would have allowed AMKO to withhold payment if SPICE did not comply with them. AMKO further contends that its performance under the PSA had nothing to do with SPICE's performance under the fee agreement and the fact that the fee agreement existed before the PSA is irrelevant to its justification defense. AMKO contends that its alleged interference was done in the exercise of its legal rights under the PSA. We conclude that AMKO did not satisfy its summary judgment burden to conclusively establish its justification defense.

To prevail on its tortious interference claim, B&P must prove (1) that it had an existing contract; (2) that AMKO willfully and intentionally interfered with the contract; (3) that the interference proximately caused B&P's injuries; and (4) that B&P suffered actual damages. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The affirmative defense of justification "can be based on the exercise of either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Id.* at 80. "[I]f a trial court finds as a matter of law that the defendant had a *legal right to interfere with a contract*, the defendant has conclusively established the justification defense . . . ." *Id.* (emphasis added). As a preliminary matter, we will not consider whether AMKO was exercising a good-faith claim to a colorable legal right because AMKO only argued in its motion for summary judgment that it was exercising its legal right to interfere. *See* Tex. R. Civ. P. 166a(c); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *see also Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996) (jury must decide whether defendant exercised colorable legal right in good faith).

Cases in which a defendant was found to have a legal right to interfere with another's contract generally share two important characteristics. First, the

24

defendant tends to have an existing relationship, often contractual, with the third party that has a contractual relationship with the plaintiff. *See, e.g.*, *Prudential Ins. Co.*, 29 S.W.3d at 81 (defendant insurance company had contractual relationships and statutory obligations to policyholders who were patients of the third-party healthcare provider that had a contract with the plaintiff); *Friendswood Dev. Co.*, 926 S.W.2d at 281 (defendant development company was in negotiations with a potential tenant before the tenant entered into an exclusive agreement with plaintiff real-estate broker); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex. 1996) (per curiam) (tortious interference with business relations case; defendant-anesthesiologist had contractual relationship with hospital that had given staff privileges to plaintiff-anesthesiologist); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 76–78 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (defendant Williams Corporation had an operating agreement with Gulf Liquids that in turn had a contract with plaintiff Gulsby); *De Miño v. Chu*, No. 01-03-01127-CV, 2005 WL 2123537, at *9 (Tex. App.—Houston [1st Dist.] Aug. 31, 2005, pet. denied) (mem. op.) (defendant-student had an existing relationship with third-party university that had a contract with plaintiff-professor); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (defendant insurance companies had existing third-party contracts and existing contractual obligations to their insureds); *Fleisher v. Pinkerton's, Inc.*, No. 05-96-00628-CV, 1998 WL 47782, at *6 (Tex. App.—Dallas Feb. 9, 1998, pet. denied) (not designated for publication) (defendant had a service contract with employment agency that had an employment contract with the plaintiff).

Second, the nature of the defendant's existing relationship with the third party generally gave the defendant an implicit right to interfere with the contractual relationship between the third party and the plaintiff. *See, e.g.*, *Prudential Ins. Co.*,

25

29 S.W.3d at 81 (insurance policies and statutes gave defendant insurance company the right to contact the plaintiff's clients and the defendant's policyholders); *Friendswood Dev. Co.*, 926 S.W.2d at 283 (preexisting relationship between defendant development company and a potential tenant led to a broker agreement between the potential tenant and the plaintiff that explicitly excepted the defendant from the broker agreement, thus giving the defendant the right to lease property to the potential tenant); *Calvillo*, 922 S.W.2d at 929 (tortious interference with business relations case; provision in contract gave defendant-anesthesiologist sole discretion to assign work to other anesthesiologists, which adversely affected the plaintiff-anesthesiologist's business relationship with hospital); *Gulf Liquids*, 356 S.W.3d at 77–78 (provision in the operating agreement gave defendant the right to withhold consent to change-orders exceeding $10,000, which hindered plaintiff's ability to obtain payment from Gulf Liquids and ultimately led to the termination of plaintiff's contract); *Chu*, 2005 WL 2123537, at *9 (university's sexual harassment policy gave defendant-student the legal right to report her professor and thus interfere with the employment contract between plaintiff-professor and the university); *Baty*, 63 S.W.3d at 864 (third party contracts gave defendant insurance companies the right to contract with insurance agents who had allegedly violated covenants not to compete; existing contracts with insureds obligated defendant insurance companies to honor change in agency appointments); *Fleischer*, 1998 WL 47782, at *6 (provision in the service contract between defendant and the employment agency gave defendant the right to affect plaintiff's employment status with the agency).

Summary judgment on the justification defense is properly granted if the trial court correctly determined that the defendant had the legal right—as a matter of law—to take the action that it did. *See Prudential Ins. Co.*, 29 S.W.3d at 80.

While certain summary judgment evidence indicated that AMKO and SPICE were negotiating the sale of SPICE's assets prior to SPICE's hiring of B&P, thus establishing an existing (if informal) relationship between AMKO and SPICE, neither the contingent fee agreement nor the PSA bestow upon AMKO any legal rights, express or implied, to interfere with B&P's contractual relationship with SPICE. The mere fact that AMKO had the right to waive the PSA's conditions precedent and pay the $27 million consideration to SPICE is not conclusive evidence that AMKO had the legal right to interfere with B&P's contract.

We conclude that AMKO has not met its summary-judgment burden to conclusively establish the affirmative defense of justification; the trial court did not correctly determine that AMKO had the legal right as a matter of law to interfere with the contingent-fee agreement between B&P and SPICE. With regard to the tortious interference and civil conspiracy claims, the trial court erred to the extent that it granted AMKO's summary judgment on justification grounds. B&P's second issue is sustained.

### E.    Holding as to AMKO

With regard to B&P's tortious interference, conspiracy, and conversion claims, the trial court erred to the extent that it granted summary judgment to AMKO on res judicata grounds. With regard to B&P's tortious interference and conspiracy claims, the trial court erred to the extent that it granted AMKO's motion for summary judgment on justification grounds. With regard to the conversion claims, the trial court erred to the extent that it granted summary judgment in favor of AMKO on B&P's claim that AMKO converted the personal property that was conveyed to it in paragraph 1(d) of the PSA. With regard to B&P's tortious interference and conspiracy claims, the trial court erred when it granted summary judgment in favor of AMKO on the one satisfaction rule because

27

punitive damages are still at issue. With regard to B&P's conversion claim, the trial court erred when it granted summary judgment in favor of AMKO on the one satisfaction rule because the one satisfaction rule does not apply to the conversion claims in this case.

In sum, we affirm the portion of the trial court's order granting summary judgment in favor of AMKO that disposed of B&P's claims related to the conversion of oil and gas interests and the conversion of alleged indebtedness. We reverse the trial court's order granting summary judgment in favor of AMKO in all other respects and remand this cause for proceedings consistent with this opinion.

## V.    Conclusion

To summarize, the trial court erred when it granted AMKO's and Dr. Myung's motions for summary judgment. Specifically, with regard to Dr. Myung's motion, we conclude as follows:

- The one satisfaction rule does not apply to B&P's conversion claim.

- In relation to the tortious interference and civil conspiracy claims, the trial court erred when it granted Dr. Myung's motion for summary judgment on the one satisfaction rule because punitive damages are still at issue.

With regard to AMKO's motion for summary judgment, we conclude as follows:

- The one satisfaction rule does not apply to B&P's conversion claim.

- In relation to the tortious interference and civil conspiracy claims, the trial court erred to the extent that it granted AMKO's motion for summary judgment on the one satisfaction rule because punitive damages are still at issue.

- To the extent that it did so, the trial court properly granted AMKO's motion for summary judgment on B&P's claim that AMKO converted (1) the oil and gas leasehold interests and working interests conveyed

under the PSA and (2) AMKO's alleged indebtedness to B&P.

- The trial court erred to the extent that it granted AMKO's motion for summary judgment on B&P's claim that AMKO converted the personal property that was conveyed to it in paragraph 1(d) of the PSA.

- The trial court erred to the extent that it granted AMKO's motion for summary judgment on res judicata grounds.

- The trial court erred to the extent that it granted AMKO's motion for summary judgment on justification grounds.

We therefore reverse the trial court's order granting summary judgment in favor of Dr. Myung, affirm in part and reverse in part the trial court's order granting summary judgment in favor of AMKO, and remand this cause to the trial court for proceedings consistent with this opinion.


/s/    Marc W. Brown
       Justice


Panel consists of Justices Boyce, Christopher, and Brown.